IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

PAUL ABBOTT, ET AL.                  :

                                     :

    v.                               :      Civil Action No. DKC 09-0372

                                     :

CHERYL R. GORDON, ET AL.             :

                                     :

**MEMORANDUM OPINION**

Presently pending and ready for resolution is the motion to dismiss filed by Defendants Cheryl Gordon-Zupancic and John Zupancic, III. (Paper 3). The issues are fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the following reasons, the motion will be granted in part and denied in part.

**I.  Background**

On April 24, 2004, Plaintiffs, Paul Abbott and Elaine Barker, entered into a contract ("Sales Contract") with Catherine Bartos, the owner of property known as 13945 Cornfield Harbor Drive, Scotland, Maryland ("Property"), for the purchase of the Property. The Sales Contract called for settlement on the Property within one hundred twenty days. Due to issues related to the septic system on the Property, Plaintiffs faced delays in obtaining a building permit. As a result, Plaintiffs requested additional time to settle on the Property. On June 24, 2004, Plaintiffs and Ms. Bartos amended the original Sales Contract by signing an "Addendum to Sales Contract" ("Addendum"), that provided that the settlement

on the property was to occur "[seven] months from the date of this signed agreement or as soon as the Purchasers are able to obtain a building permit, which they shall diligently pursue." (Paper 1, Ex. 1, Addendum to Sales Contract, at 2).   The seven month extension extended the settlement date to January 24, 2005, and also allowed Plaintiffs to extend the settlement date beyond January 24, 2005, in the event they were unable to obtain a building permit prior to settlement.

A few months after Plaintiffs and Ms. Bartos signed the Sales Contract, Defendants Cheryl Gordon-Zupancic and John Zupancic, III became aware of the Sales Contract.   On October 19, 2004, Defendants sent Ms. Bartos a proposed Contract of Sale for the Property ("Back-Up Contract"), declaring that the contract was a "back-up offer."   The Back-Up Contract did not include any contingencies, offered a higher purchase price than Plaintiffs' Sales Contract, and did not impose any closing costs on Ms. Bartos. The  Back-Up Contract also included a term prohibiting Ms. Bartos from extending her contract with Plaintiffs beyond January 24, 2005.

In the weeks following Defendants' submission of the Back-Up Contract, Ms. Bartos began suggesting to Plaintiffs that they rescind the Sales Contract.   Ms. Bartos offered to refund Plaintiffs' deposit and informed Plaintiffs that she or Defendants would pay a portion of Plaintiffs' expenses.

Plaintiffs allege that, from October 2004 through November 2004, Defendants contacted Plaintiffs, Ms. Bartos, and the Office of Land Use & Growth Management through a variety of pseudonyms. These contacts negatively portrayed Plaintiffs to Ms. Bartos and the Office of Land Use & Growth Management and attempted to discourage Plaintiffs from settling on the Property.

Beginning in November 2004, Ms. Bartos told Plaintiffs that Defendants would sue her if she settled with Plaintiffs. From November 2004 through December 2004, Plaintiffs experienced further delays in the permit process, which made settlement prior to January 24, 2005 unlikely. Accordingly, Plaintiffs requested a later settlement date from Ms. Bartos. Ms. Bartos responded that she could not agree to a later date because she was bound by the Back-Up Contract to refuse any settlement after January 24, 2005.

Plaintiffs and Ms. Bartos met on January 21, 2005 at the Law Offices of Harris & Capristo to complete the settlement. Plaintiffs still had not obtained a building permit. Plaintiffs allege that, prior to January 21, 2005, Defendants, using a pseudonym, sent a fax to Plaintiffs' settlement attorney, Mr. Harris, asserting that there was a *lis pendens* filed against the Property.[1] The fax also stated that Plaintiffs had an "unethical"

---

[1] A *lis pendens* is a "notice, recorded in the chain of title to real property . . . to warn all persons that certain property is the subject matter of litigation, and that any interests acquired during the pendency of the suit are subject to its outcome." Black's Law Dictionary 1335 (8th ed. 2004).

and "illegal" track record in purchasing and developing properties. Mr. Harris informed the parties of the fax but advised Plaintiffs to go forward with the settlement by paying the purchase funds into escrow.  Ms. Bartos informed Plaintiffs that she did not want to settle if the purchase funds would be paid into escrow.  The following business day, Mr. Harris verified that there was no *lis pendens* on the property, but Ms. Bartos again refused to settle, stating that she had a Back-Up Contract with a higher purchase price and no contingencies.  Plaintiffs consider Ms. Bartos to have breached the Sales Contract on January 21, 2005, when she refused to settle on the Property.

Subsequently, Plaintiffs filed a lawsuit ("Third-Party Litigation") against Ms. Bartos in the Circuit Court for St. Mary's County, Maryland seeking specific performance of the Sales Contract.  Ms. Gordon-Zupancic then sent Ms. Bartos a letter negatively portraying Plaintiffs and offering to help support Ms. Bartos in her defense against Plaintiffs.  Defendants and Ms. Bartos later executed an Addendum to the Back-Up Contract ("Back-Up Addendum") requiring that Ms. Bartos obtain a judgment as to the enforceability of the Sales Contract before she settled on the Property.  Despite continued attempts at settlement discussions, Ms. Bartos continued to assert that she could not settle with Plaintiffs unless they obtained a final judgment holding the Sales Contract enforceable.

4

On November 3, 2005, Ms. Bartos filed a third-party complaint against Defendants.  In her complaint, Ms. Bartos alleged that she had requested that Defendants release her from liability to enable her to settle the Third-Party Litigation with Plaintiffs and complete the sale of the Property.  Ms. Bartos also alleged that Defendants repeatedly refused to grant her request and instead told her that she could not settle the Third-Party Litigation with Plaintiffs.  In her complaint, Ms. Bartos sought a declaratory judgment stating that she could settle the Third-Party Litigation by selling the Property to Plaintiffs, unhindered by any potential liability from the Back-Up Contract.

On March 30, 2006, Defendants intervened in the ongoing Third-Party Litigation with the alleged purpose of defeating the validity of Plaintiffs' Sales Contract and upholding the validity of the Back-Up Contract.  The trial court ruled in favor of Plaintiffs on July 12, 2006, granting specific performance of the Sales Contract and ordering settlement on the Property.  Defendants and Mrs. Bartos subsequently filed separate notices of appeal.  The Court of Special Appeals of Maryland affirmed the trial court's judgment on October 18, 2007.  After the conclusion of the Third-Party Litigation, Defendants published a website, www.theretainercheck.com, about the Third-Party Litigation. Defendants also contacted both St. Mary's County and a surveying company hired by Plaintiffs with the alleged purpose of obstructing

Plaintiffs' ability to obtain a building permit and settle on the Property.

On February 17, 2009, Plaintiffs filed a complaint against Defendants in this court asserting three claims: (1) tortious interference with contractual relations; (2) tortious interference with prospective advantage; and (3) defamation.  Plaintiffs seek compensatory and punitive damages, pre-judgment and post-judgment interest, and attorneys' fees.  On April 6, 2009, Defendants filed a motion to dismiss, asserting that Plaintiffs' complaint: (1) is barred by the applicable statute of limitations; and (2) fails to state a claim for which relief can be granted.   (Paper 3).  Plaintiffs concede that count III should be dismissed with leave to amend if discovery reveals further facts.  (Paper 8, at 9).

## II.  Motion to Dismiss

### A.   Standard of Review

The purpose of a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). Except in certain specified cases, a plaintiff's complaint need only satisfy the "simplified pleading standard" of Rule 8(a), *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief."   Fed.R.Civ.P. 8(a)(2). Nevertheless, "Rule 8(a)(2) still requires a 'showing,' rather than

a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007).  That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement."  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009)(internal citations omitted).

In its determination, the court must consider all well-pled allegations in a complaint as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and must construe all factual allegations in the light most favorable to the plaintiff.  *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999)(citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)).  The court need not, however, accept unsupported legal allegations, *Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Iqbal*, 129 S.Ct. at 1950, or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but it has not 'show[n] . . . that the pleader is entitled to relief.'" *Iqbal*, 129 S.Ct. at 1950 (quoting Fed.R.Civ.P. 8(a)(2)).  Thus, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the

reviewing court to draw on its judicial experience and common sense." *Id.*

"In deciding a Rule 12(b)(6) motion, the court will consider the facts stated in the complaint and the documents attached to the complaint.  The court may also consider documents referred to in the complaint and relied upon by plaintiff in bringing the action." *Abadian v. Lee,* 117 F.Supp.2d 481, 485 (D.Md. 2000)(citing *Biospherics, Inc., v. Forbes, Inc.,* 989 F.Supp. 748, 749 (D.Md. 1997), *aff'd,* 151 F.3d 180 (4th Cir. 1998)); *see, e.g., Darcangelo v. Verizon Commc'ns, Inc.,* 292 F.3d 181, 195 n.5 (4th Cir. 2002)(citing *New Beckley Mining Corp. v. Int'l Union*, *United Mine Workers of Am.*, 18 F.3d 1161, 1164 (4th Cir. 1994)).  When doing so, the court need not convert a Rule 12(b)(6) motion to dismiss to one for summary judgment so long as it does not consider matters "outside the pleading."  *See* Fed.R.Civ.P. 12(b)("If [on a 12(b)(6) motion to dismiss,] matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 . . . ."); *Laughlin v. Metro. Washington Airports Auth.,* 149 F.3d 253, 260-61 (4th Cir. 1998).  Here, Plaintiffs have appended to their complaint copies of the Sales Contract, the Addendum, the Back-Up Contract, and the Back-Up Addendum.

B.    **Analysis**

1.    **Statute of Limitations**

A motion to dismiss pursuant to 12(b)(6) does not generally permit an analysis of potential defenses Defendants may have to the asserted claims.   However, dismissal may be appropriate when a meritorious affirmative defense is clear from the face of the complaint. *Brooks v. City of Winston-Salem, N.C.*, 85 F.3d 178, 181 (4th Cir. 1996)(citing *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 250 (4th Cir. 1993); 5A Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357, at 352 (1990)("A complaint showing that the statute of limitations has run on the claim is the most common situation in which the affirmative defense appears on the face of the pleading," rendering dismissal appropriate.)).

The parties agree that the applicable statute of limitations governing this dispute is the three-year statute of limitations set forth in Md. Code Ann., Cts. & Jud. Proc. § 5-101.   In Maryland, courts generally apply the discovery rule in determining when a cause of action accrues.  *Martin Marietta Corp. v. Gould, Inc.*, 70 F.3d 768, 771 (4th Cir. 1995).   The discovery rule provides that a cause of action accrues when a plaintiff knew or reasonably should have known of the wrong. *Doe v. Am. Nat'l Red Cross*, 923 F.Supp. 753, 756 (D.Md. 1996).   A plaintiff reasonably should have known of the wrong when he had "knowledge of sufficient facts to cause a

reasonable person to investigate further." *Pennwalt Corp. v. Nasios*, 314 Md. 433, 443 (1988).

Defendants assert that counts I and II are barred by Maryland's three-year statute of limitations because both claims rely on events that occurred more than three years before Plaintiffs filed their complaint on February 17, 2009. (Paper 3, at 1). Plaintiffs maintain that their claims are not barred by the statute of limitations for three reasons: (1) the statute of limitations for tortious interference could not accrue until after the conclusion of the Third-Party Litigation; (2) the statute of limitations was tolled during the Third-Party Litigation; and (3) their claims survived as a result of the continuous violation doctrine. (Paper 8).

**a. Count I - Tortious Interference with Contract**

Maryland has long recognized the tort of intentional interference with contract. *Macklin v. Robert Logan Assocs.*, 334 Md. 287, 297 (1994). The elements of the claim are:

> "(1) The existence of a contract or a legally protected interest between the plaintiff and a third party; (2) the defendant's knowledge of the contract; (3) the defendant's intentional inducement of the third party to breach or otherwise render impossible the performance of the contract; (4) without justification on the part of the defendant; (5) the subsequent breach by the third party; and (6) damages to the plaintiff resulting therefrom." *Bagwell v. Peninsula Regional Medical Ctr.*, 106 Md.App. 470, 503, 665 A.2d 297 (1995), *cert. denied*, 341 Md. 172, 669 A.2d 1360

(1996)(quoting *Storch v. Ricker*, 57 Md.App. 683, 703, 471 A.2d 1079 (1984)).

*Blondell v. Littlepage*, 185 Md.App. 123, 153-154 (Md.App. 2009). Plaintiffs argue that the cause of action for tortious interference with contractual relations could not have arisen until judgment in the Third-Party Litigation was entered in their favor establishing Ms. Bartos' breach of the Sales Contract, which did not happen until January 31, 2008.[2] Alternatively, Plaintiffs contend that the statute of limitations was tolled during the Third-Party Litigation. Plaintiffs argue that the Third-Party Litigation tolled the statute of limitations because the state court's disposition of the breach of contract issue was critical to Plaintiffs' claim of tortious interference with contractual relations. Finally, Plaintiffs assert that, under the continuing violations doctrine, claims related to specific acts done within three years preceding suit are not time barred. As to all arguments, Defendants maintain that the state court's disposition of the breach of contract case was not critical to Plaintiffs' cause of action against Defendants. Defendants insist that any cause of action that Plaintiffs may have had against Defendants for

---

[2] In their complaint, Plaintiffs allege that the Court of Special Appeals affirmed the Circuit Court's holding in the Third-Party Litigation in a decision issued on October 18, 2007. In their opposition to Defendants' motion to dismiss, Plaintiffs refer to the date that the Court of Special Appeals issued its mandate, on January 31, 2008.

tortious interference with contractual relations accrued on January 21, 2005, when the underlying contract was breached.

Plaintiffs, citing *Washington, Baltimore & Annapolis Elec. R.R. Co. v. Moss*, 130 Md. 198 (1917), and *Goldstein v. Potomac Elec. Power Co.,* 285 Md. 673 (1979), argue that the cause of action did not accrue until the conclusion of the Third-Party Litigation. Plaintiffs' reliance on these cases is misplaced.  Both cases present an outdated rule of accrual that is general in nature and not specific to tortious interference with contractual relations claims.  More recent cases hold that the statute of limitations for a claim of tortious interference with contractual relations accrues upon the date the contract is breached or terminated.  *See e.g.*, *Dual Inc. v. Lockheed Martin Corp.*, 383 Md. 151, 168 (2004).  Ms. Bartos breached the Sales Contract on January 21, 2005, when she refused to settle on the Property.  Therefore, the statute of limitations for count I accrued on January 21, 2005.  Plaintiff was required to file suit by January 21, 2008, but did not do so until February 17, 2009.

Furthermore, tolling does not apply.  Maryland applies a "rule of strict construction concerning the tolling of statute of limitations.  Absent legislative creation of an exception to the statute of limitations, courts will not allow any implied and equitable exception to be engrafted upon it." *Hecht v. Resolution Trust Corp.*, 333 Md. 324, 333 (1994)(internal marks omitted)(citing

12

*Booth Glass Co. v. Huntingfield Corp.*, 304 Md. 615, 623 (1985);
*McMahan v. Dorchester Fertilizer Co.*, 184 Md. 155, 160 (1944)).
Legislative exceptions engrafted on the statute of limitations
include: individuals with disability, dismissal of an insolvency
petition, and lack of knowledge due to fraudulent actions.  Md.
Code Ann., Cts. & Jud. Proc. §§ 5-201-203 (2006); *Booth Glass Co.*,
304 Md. at 623-24.   Plaintiffs point only to the Third-Party
Litigation as a source of equitable tolling.  While the suit may
have determined whether Ms. Bartos breached the contract, the suit
did not preclude Plaintiffs from filing this action.  Thus, the
suit provides no basis for tolling the statute of limitations.

The continuous violation doctrine tolls the statute of
limitations where the violations are continuous in nature.
*MacBride v. Pishvaian*, 402 Md. 572, 584 (2007).  Under this
doctrine, a claim is not barred simply because one or more of the
violations occurred earlier in time.  *Id.*  However, to qualify as
continuing violations, the acts must be "continuing unlawful acts
. . . not merely the *continuing effects* of a single earlier act."
*Id.*  (emphasis added).

Plaintiffs argue that Defendants' actions in the three years
prior to the filing of the suit, including Defendants' involvement
in the Third-Party Litigation, constitute violations that were
continuing in nature and therefore not barred by the statute of
limitations. Specifically, Plaintiffs assert that Defendants

published a website criticizing Plaintiffs' attorneys and certain judicial officials and displaying Ms. Barker's personal information, sent a letter to St. Mary's County, Maryland regarding Plaintiffs' efforts to obtain a building permit, and contacted Nokleby Surveying, a surveying company hired by Plaintiffs.

Defendants counter that the continuous violation doctrine cannot apply here for a number of reasons.  First, Defendants assert that, while Maryland law recognizes two causes of action for improper conduct related to civil litigation, "malicious use of process" and "abuse of process," the mere fact that Defendants participated in litigation does not support a cause of action for tortious interference with contractual relations.  Defendants also argue that Plaintiffs fail to allege that Defendants' actions in the Third-Party Litigation were without right or justifiable cause, or were done to damage Plaintiffs.  Defendants insist that the three alleged actions, taken at an unspecified time after January 2008, cannot revive a tort that allegedly occurred no later than January 21, 2005.  Defendants maintain that, because Ms. Bartos performed her part of the contract almost immediately after the conclusion of the Third-Party Litigation, it is difficult to imagine how any later actions taken by Defendants could have possibly interfered with that contract or caused its breach.

The Sales Contract between Plaintiffs and Ms. Bartos was not a continuing contract, but rather a contract related to a single

14

transaction, the sale of the Property.  While Defendants may have acted continually with relation to the Sales Contract, the claim accrued upon breach of the Sales Contract and no further actions on the part of Defendants could have caused an additional breach.[3] Accordingly, count I for tortious interference with contractual relations is barred by the statute of limitations and will be dismissed.

### b.   Count II - Tortious Interference with Prospective Advantage

Under Maryland law, the elements of tortious interference with prospective advantage are: "(1) intentional and willful acts; (2) calculated to cause damage to the plaintiff[s] in [their] lawful business; (3) done with the unlawful purpose to cause such damage and loss, without right or justifiable cause on the part of the defendants (which constitutes malice); and (4) actual damage and loss resulting." *Carter v. Aramark Sports and Entm't Servs., Inc.*, 153 Md. App. 210, 240 (2003)(internal quotations omitted), *cert. denied*, 380 Md. 231 (2004).

Plaintiffs allege that, following Ms. Bartos' breach of the Sales Contract, Defendants continued to act in ways that interfered with Plaintiffs' prospective economic advantage.  Plaintiffs argue that many of Defendants' interferences with Plaintiffs' prospective economic advantage occurred after February 17, 2006, and thus

---

[3] As will be seen, count II, tortious interference with prospective advantage, may apply to these later events.

occurred within three years of filing this case. Plaintiffs conclude that, under the continuous violation doctrine, the statute of limitations cannot act as a complete bar to count II. *See Hi-Lite Prod. Co. v. Am. Home Prod. Corp.*, 11 F.3d 1402, 1410 (7th Cir. 1993).

Each alleged interference with Plaintiffs' prospective advantage constitutes a separate cause of action, with its own date of accrual. *Id.* (finding each partial breach of a "continuous contract" is "actionable and subject to its own accrual date and own limitation period"). Therefore, while not acting as a complete bar to count II, the statute of limitations does not allow the court to look to any of Defendants' actions occurring more than three years prior to the filing of this case. Accordingly, in determining whether Plaintiffs state a claim for which relief can be granted, the court will limit the analysis to Defendants' alleged actions occurring after February 17, 2006.

## 2.  Failure to State a Claim

Plaintiffs allege that Defendants engaged in numerous improper and harassing activities after February 17, 2006, that interfered with their prospective business advantage: (1) interfering in the Third-Party Litigation and hindering Plaintiffs' ability to settle on the Property; (2) publishing the website www.theretainercheck.com, criticizing Plaintiffs' attorneys and certain judicial officials, and displaying a copy of Ms. Barker's

16

personal check, a copy of the deed to the Property, and other information related to Plaintiffs' purchase of the Property; (3) sending a letter to St. Mary's County, Maryland questioning how an application, pending since September 30, 2004, and which expired during the Third-Party Litigation, could still be active;[4] and (4) attempting to hinder Plaintiffs' efforts to obtain a building permit by contacting and questioning Nokleby Surveying, a surveying company hired by Plaintiffs.  Plaintiffs assert that this contact interfered with re-recording the subdivision of a half-lot that was part of the Property.  The re-recording was required before Ms. Bartos could fully transfer ownership of the Property to Plaintiffs.

Defendants contend that count II should be dismissed because, taking all of Plaintiffs' allegations as true, Plaintiffs fail to state a claim upon which relief can be granted for two reasons. First, Defendants assert that Plaintiffs fail to allege properly the second element of their claim, which is, that Defendants acted to damage Plaintiffs "in their lawful business."  Second, Defendants argue that the events upon which Plaintiffs rely that are not barred by the statute of limitations occurred during the

---

[4] Mr. Zupancic recommended that the County follow its polices and procedures very carefully and insinuated that the County's process would undergo a very detailed audit by the courts and lawyers involved in the Third-Party Litigation.  While not explicitly set out in the complaint, it appears that the application to which Plaintiffs refer is their building permit application.

Third-Party Litigation and that it is "impossible to believe that Defendants successfully opposed Plaintiffs' summary judgment motion while simultaneously acting in bad faith and without substantial justification."

Defendants' arguments concerning this count fail.  Contrary to Defendants' assertion, the words "in their lawful business" are not narrowly defined.  The fact that Plaintiffs may not own a business or may not have purchased the Property as part of their employment does not exclude Plaintiffs from asserting a tortious interference with prospective relations claim.  *See Bagwell*, 106 Md.App. at 504 (likening the language "in their lawful business" with "existing or anticipated economic relationships"); MPJI-Cv 7:02 (2005)(listing the second element of tortious interference with economic relationship as "calculated to cause damage and loss to plaintiff in his or her lawful business or to his or her economic rights").  Therefore, Plaintiffs need not actually allege that Defendants' actions were meant to damage Plaintiffs "in their lawful business."  Because the buying and selling of property is a business relation and involves economic rights, the "lawful business" aspect of this element is satisfied.

Defendants' second argument goes to the merits of the claim.  In examining a complaint for failure to state a claim upon which relief may be granted, the court takes all of Plaintiffs' alleged facts as true.  *Iqbal*, 129 S.Ct. at 1949-50.  Plaintiffs allege

that Defendants' actions in the Third-Party Litigation were unjustified.  The court will not address the merits or accuracy of Plaintiffs' claims at this time.  Therefore, Defendants' motion to dismiss for failure to state a claim will be denied.

**III.  Conclusion**

For the foregoing reasons, Defendants' motion to dismiss will be granted in part and denied in part.  A separate Order will follow.

                            _____/s/_____
                            DEBORAH K. CHASANOW
                            United States District Judge