IN THE UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF MARYLAND

PAUL ABBOTT, et al.           :
                              :
     v.                       :   Civil Action No. DKC 09-0372
                              :
CHERYL R. GORDON, et al.      :
                              :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this case arising from a dispute over a contract for the sale of real property is a motion filed by Defendants Cheryl R. Gordon-Zupancic and John M. Zupancic, III, for a protective order. (Paper 32). The issues have been briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, Defendants' motion will be denied.

**I.  Background**

The factual background of this case was set forth in detail in a prior memorandum opinion (paper 10), and will be repeated here only to the extent necessary to frame the relevant issues. On April 24, 2004, Plaintiffs Paul Abbott and Elaine Barker entered into a contract with Catherine Bartos to purchase a parcel of real property owned by Ms. Bartos in Scotland, Maryland ("the Property"). Prior to settlement, Ms. Bartos

entered into a contingency contract with Defendants, in October 2004, for the sale of the same property in the event that the settlement between Plaintiffs and Ms. Bartos did not occur ("the Backup Contract"). In February 2005, Ms. Bartos and Defendants executed an Addendum to the prior contract ("Addendum"). Both the Backup Contract and the Addendum were prepared by Nathan Finkelstein, Esq., who was retained by Defendants.

On February 17, 2009, Plaintiffs filed a complaint in this court asserting three claims against Defendants: (1) tortious interference with contractual relations; (2) tortious interference with prospective advantage; and (3) defamation. (Paper 1). Defendants responded on April 6, 2009, by filing a motion to dismiss, contending that Plaintiffs' claims were barred by the relevant statute of limitations and that Plaintiffs had failed to state claims upon which relief could be granted. (Paper 3). In opposing that motion, Plaintiffs conceded that their defamation count could not survive the dismissal motion. (Paper 8, at 9).

On August 6, 2009, this court issued an order granting Defendants' motion as to the first count of the complaint, but denying relief as to the second. (Paper 11). In an accompanying memorandum opinion, the court explained that Plaintiffs' tortious interference with contract claim was time-barred, but found that insofar as Plaintiffs alleged that

2

Defendants engaged in numerous improper and harassing activities occurring after February 17, 2006, their claim for tortious interference with prospective advantage was both timely and sufficiently pled.  (Paper 10, at 16-19).  Accordingly, counts I and III of the complaint were dismissed, but the case was permitted to go forward on the tortious interference with prospective advantage claim related to conduct occurring after February 17, 2006.   Defendants then answered the complaint (paper 13), a scheduling order was issued (paper 17), and the discovery process commenced.

On March 29, 2010, Plaintiffs moved to extend the current discovery deadline by thirty days, asserting that certain scheduling conflicts necessitated the postponement of various depositions, including that of Mr. Finkelstein, the attorney who drafted Defendants' Backup Contract and Addendum.  (Paper 30).  The court scheduled a telephone conference for the following afternoon, March 30, at 3:00 p.m.   Prior to that conference, Defendants filed the motion for protective order that is presently before the court, seeking an order quashing Mr. Finkelstein's notice of deposition and subpoena pursuant to Fed.R.Civ.P. 26(c).  (Paper 32).

**II. Analysis**

Federal Rule of Civil Procedure 26(c) provides, in pertinent part, that the court "may, for good cause, issue an

order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]" The general standard for discovery under Fed.R.Civ.P. 26, is relatively broad:

> Rule 26 governs discovery entitlement and provides that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party. . . ." Fed.R.Civ.P. 26(b)(1). While the Federal Rules of Civil Procedure do not define relevance, the Federal Rules of Evidence do, as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 401. Or, as rephrased in the commentary, "[d]oes the item of evidence tend to prove the matter sought to be proved?"

*United Oil Co., Inc. v. Parts Assocs., Inc.*, 227 F.R.D. 404, 409 (D.Md. 2005) (footnote omitted).

Motions seeking to prevent the taking of depositions are generally regarded unfavorably by the courts. *See Minter v. Wells Fargo Bank, N.A.*, 258 F.R.D. 118, 125 (D.Md. 2009). "By requesting the [c]ourt to prohibit plaintiff from deposing a witness, defendant . . . assumes a heavy burden because protective orders which totally prohibit a deposition should be rarely granted absent extraordinary circumstances." *Static Control Components, Inc. v. Darkprint Imaging*, 201 F.R.D. 431,

434 (M.D.N.C. 2001). The Fourth Circuit has explained, however, that discovery requests may be limited in appropriate cases:

> On its own initiative or in response to a motion for protective order under Rule 26(c), a district court may limit "the frequency or extent of use of the discovery methods otherwise permitted" under the Federal Rules of Civil Procedure if it concludes that "(i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit." Fed.R.Civ.P. 26(b)(2). Further, upon motion of a party and "for good cause shown," the court in the district in which a deposition is to be taken may "make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," including an order that the discovery not be had. Fed.R.Civ.P. 26(c).

*Nicholas v. Wyndham Int'l., Inc.*, 373 F.3d 537, 543 (4th Cir. 2004).

While Plaintiff's notice of deposition does not specify the topics designated for Mr. Finkelstein's deposition, Plaintiffs purportedly represented to Defendants during a telephone conversation that they seek his testimony primarily in relation to a May 18, 2006, letter – addressed to Defendants from him – in which the attorney recounts the substance of certain communications he had with Plaintiffs. Counsel for Plaintiffs

further advised that because the letter was produced by Defendants in a discovery response, the attorney-client privilege had been waived. Defendants contest this point, arguing that insofar as the letter does not contain legal advice, it is not privileged, and if it is deemed to be privileged, it was produced inadvertently and does not constitute "a 'blanket waiver' allowing wide-ranging inquiry into Defendants' relationship with Finkelstein at deposition." (Paper 32, Attach. 1, at 4). They further contend that because Mr. Finkelstein's involvement in the underlying facts of the case relate to events occurring in or around December 2004, his testimony could not be relevant "because the Court's [prior] Order established February 17, 2006[,] as the cut-off for events that are allegedly actionable in this case." (*Id*. at 5). According to Defendants, the scheduled deposition would therefore result in needless expense and should be precluded pursuant to Fed.R.Civ.P. 26(c). Alternatively, they seek an order limiting the areas of inquiry at the deposition, specifically prohibiting "any inquiry into privileged matters." (*Id*. at 4).

In opposing, Plaintiffs acknowledge that "the statute of limitations bars liability for actions taken by Defendant prior to February 17, 2006," but assert that "this does not mean Defendants' prior interference cannot be used to explain their

subsequent misconduct, which is not time barred." (Paper 34, at 1). Plaintiffs contend that they are entitled to inquire as to Mr. Finkelstein's communications with them because the attorney-client privilege "does not apply to . . . communication[s] with third-parties." (*Id.* at 6). They apparently assume that the May 18 letter was subject to the attorney-client privilege, but claim that Defendants waived the privilege when they produced the document as discovery such that "all matters discussed in that letter should be open to Plaintiffs' questioning" at the deposition. (*Id.* at 7-8).

Notably, Plaintiffs do not argue that production of the May 18 letter constitutes a "blanket waiver," permitting inquiry into all matters that would otherwise be protected by the attorney-client privilege, as Defendants had anticipated. Rather, they essentially present alternative arguments that they are permitted to question Mr. Finkelstein about his communications with third parties while he represented Defendants. The first argument – *i.e.*, that Mr. Finkelstein's communications with Plaintiffs while he represented Defendants are not subject to the attorney-client privilege – is not contested by Defendants. Because the substance of the letter, which is attached to Defendants' motion as an exhibit, relates exclusively to conversations Mr. Finkelstein had with third parties, the testimony sought by Plaintiffs involves

7

communications that neither party claims is privileged. In that sense, there appears to be no real dispute, at least insofar as the scope of the scheduled deposition is concerned. The issue is complicated, however, by Plaintiffs' second argument, which assumes the letter is privileged, but argues that the privilege has been waived by virtue of Defendants' production of the document during discovery. Insofar as Plaintiffs only seek testimony related to the conversations with third parties, however, the letter itself is largely irrelevant. Nevertheless, because the letter is not protected under the attorney-client privilege, no waiver could have occurred.

In *Newman v. State*, 384 Md. 285, 302-03 (2004), the Maryland Court of Appeals set forth the relevant standard regarding when the attorney-client privilege applies:

> The privilege is understood to be "a rule of evidence that prevents the disclosure of a confidential communication made by a client to his attorney for the purpose of obtaining legal advice." *See E.I. du Pont de Nemours & Co. v. Forma-Pack, Inc.*, 351 Md. 396, 414, 718 A.2d 1129, 1138 (1998), citing *Levitsky v. Prince George's County*, 50 Md.App. 484, 491, 439 A.2d 600, 604 (1982). In *Harrison v. State*, [276 Md. 122 (1975)], we adopted Professor Wigmore's definition of the attorney-client privilege:
>
> > (1) Where legal advice of [any] kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his insistence

> permanently protected (7) from disclosure by himself or by his legal adviser, (8) except the protection [may] be waived.
>
> 276 Md. at 135, 345 A.2d at 838, quoting 8 John H. Wigmore on Evidence § 2292, at 554 (McNaughton rev. ed. 1961) (footnote omitted). The common law privilege is codified in Section 9-108 of the Courts and Judicial Proceedings Article of the Maryland Code, which states, "A person may not be compelled to testify in violation of the attorney-client privilege." Md.Code (1974, 2002 Repl.Vol.), § 9-108 of the Courts and Judicial Proceedings Article.
>
> The privilege, although essential to an effective attorney-client relationship, is not absolute. *In re Criminal Investigation No. 1/242Q*, 326 Md. 1, 11, 602 A.2d 1220, 1225 (1992). We have observed that "[o]nly those attorney-client communications *pertaining to legal assistance and made with the intention of confidentiality* are within the ambit of the privilege." *E.I. du Pont de Nemours*, 351 Md. at 416, 718 A.2d at 1138. This Court in *Lanasa v. State*, 109 Md. 602, 71 A. 1058 (1909), observed, "[T]o make the communications privileged, they ... must relate to professional advice and to the subject-matter about which the advice is sought." *Id*. at 617, 71 A. at 1064. *See also Morris v. State*, 4 Md.App. 252, 255, 242 A.2d 559, 561 (1968), quoting *Colton v. United States*, 306 F.2d 633, 637, *cert. denied* 371 U.S. 951, 83 S.Ct. 505, 9 L.Ed.2d 499 (1963) ("[T]he privilege extends essentially only to the substance of matters communicated to an attorney in professional confidence.").

(emphasis in original).

Under that standard, it is clear that May 18 letter from Mr. Finkelstein to Defendants is not protected by the attorney-

client privilege.  Initially, unlike the vast majority of cases considering its application, the only party that could assert the privilege here, *i.e.*, Defendants, strenuously argues that it does not apply.  As the first paragraph of the letter makes clear, moreover, it is written in response to Defendants' "inquiry as to whether [Mr. Finkelstein] made a threat to Ms. Ellen Barker regarding the contract for [Defendants'] purchase of [the Property]."  (Paper 32, Ex. B, at 1).  It goes on to describe the substance of a December 29, 2004, conversation Mr. Finkelstein had with Ms. Barker; the content of a January 13, 2005, letter he received from Plaintiffs; and concludes by stating, "[a]ccording to my recollection and my review of the file, there is no indication at any point that I represented to Ms. Barker and Mr. [Abbott] that you and Mr. Zupancic were prepared to file suit against Ms. Bartos."  (*Id*. at 2).  Thus, the letter did not "pertain to legal assistance" nor was it drafted "with the intention of confidentiality."  *Newman*, 384 Md. at 303 (quoting *E.I. du Pont de Nemours & Co. v. Forma-Pack, Inc.*, 351 Md. at 414, 416).  Accordingly, the letter from Mr. Finkelstein to Defendants was not protected by the attorney-client privilege, and its production during the discovery process could not constitute a waiver of the privilege.

Defendants have failed to cite any extraordinary circumstance that would justify the issuance of an order

10

precluding Mr. Finkelstein's deposition, however. Although Defendants may not be liable for conduct occurring before February 17, 2006, due to the statute of limitations defense, such conduct may nevertheless provide context for similar acts alleged to have occurred after that date. To the extent that Mr. Finkelstein engaged in non-privileged communications regarding those acts, his testimony may well be relevant to this action. Thus, the deposition will be permitted to proceed, and the court finds no need for an order limiting its scope, particularly in light of Plaintiffs' representations in opposing the instant motion.

### III. Conclusion

For the foregoing reasons, Defendants' motion for protective order will be denied. A separate order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge