_____ FILED _____ ENTERED
_____ LOGGED _____ RECEIVED

SEP - 9 2010

AT GREENBELT
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| PAUL ABBOTT, et al. | * | |
| Plaintiffs | * | |
| v. | * | Case No.: 8:09-cv-00372-DKC |
| CHERYL R GORDON, et al. | * | |
| Defendants | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## **OBJECTION TO MOTION TO WITHDRAW**

Plaintiffs, Paul Abbott and Elaine Barker, put forth the following objections to Jan Berlage's Motion to Withdraw Appearance:

1. Plaintiffs have paid approximately $82,000 in legal fees.

2. Subsequent to Memorial Day 2010, Mr. Berlage called the plaintiffs to give them advance notice that their bill for responding to a single motion would be in excess of $30,000. When Mr. Abbott asked how the bill could be that much, Mr. Berlage's comments and explanation were literally, "The bill speaks for itself" and "It is what it is."

3. The bills after this phone call indicate that Mr. Berlage had charged approximately $44,000 in five weeks.

4. In Item 4 of the Motion to Withdraw Appearance (MWA) Mr. Berlage states "Plaintiffs were required to make timely payment of all invoices of Counsel". Nowhere in Mr. Berlage's MWA does he state that Plaintiffs have disputed the reasonableness of his bills. Plaintiffs do not understand that anything in the Engagement Letter obligates them to pay fees without an understandable explanation of what work was done or for work that was unnecessary and not productive.

1

5. June 25, 2010 Plaintiffs met with Mr. Berlage and Mark Stichel to discuss the work that had been done and the justification for their bills.

6. During the June 25, 2010 meeting Mr. Berlage and Mr. Stichel responded to questions about what had taken so long and why certain occurrences in the case had happened either with silence, "I don't know", and in response to a question of how two people could spend approximately 80 hours each researching and drafting a motion (Mr. Berlage had been billing Plaintiffs for nearly a year for work related to the topic researched). Mr. Berlage and Mr. Stichel's sole response and explanation was in a very close paraphrase, "There were a lot of quotes to check from the depositions."

7. Mr. Berlage, while indicating that Plaintiffs have not understood what has happened, has offered to go to mediation. Having experienced meeting with Mr. Berlage and Mr. Stichel for nearly 2 hours with the unproductive and non-constructive results mentioned in Item 6, Plaintiffs have offered (1) to go to mediation with the condition that Mr. Berlage meet with them and have a discussion as to what was done and why and that this discussion be either recorded on tape or by a court reporter to avoid misunderstandings as to what was actually said - Plaintiffs have offered to pay Mr. Berlage's hourly rate for such a meeting, and (2) alternatively, Plaintiffs have offered to go to non-binding mediation in an attempt to resolve our disagreements. Mr. Berlage has refused both offers.

8. In Item 6 of the MWA Mr. Berlage references the Rules of Professional conduct that allow him to withdraw if bills have not been paid and "The representation will result in an unreasonable financial burden on the lawyer." While Plaintiffs are not familiar with the Maryland Bar's Rules of Professional Conduct, Plaintiffs doubt that those rules allow an attorney to do whatever he wants, ignore clients' instructions, charge whatever he wants without giving clients notification that seemingly unreasonable and unexpected costs will be incurred, and that

an attorney is under no obligation to explain or justify verbally or in writing what and why he has done what he has done beyond presenting his clients a unclear, generic bill.

9. Plaintiffs do not believe that meeting with them or going to mediation, as described in Item 7, would place any financial burden on Mr. Berlage.

10. Plaintiffs believe after working with Mr. Berlage for over a year and paying approximately $82,000 in legal fees that fairness and reasonableness require that Mr. Berlage not be permitted to withdraw because Plaintiffs have disputed a legal bill of approximately $44,000, for a 5-week period, that seemingly came out of nowhere with no notice, no justification, and no explanation and that Mr. Berlage's behavior places an unreasonable burden, both financially and legally, on the Plaintiffs, and if he is allowed to withdraw and destroy their records, it will be damaging and punitive on his part.

11. Mr. Berlage's unreasonable and unjustified retention of the Guenther files, which consist of records from both the original action involving Plaintiffs versus Bartos and Plaintiffs versus Guenther, has already had a detrimental effect on the Plaintiffs' ability to represent themselves in a *pro se* appeal – a case from which Mr. Berlage withdrew in Spring 2010. Mr. Berlage's withdrawal and the fact that all records relating to Plaintiffs and Guenther have long since been paid for.

Nevertheless, Mr. Berlage has retained these files, to which he has no right, in a transparent attempt to force Plaintiffs to pay a disputed bill.

12. Mr. Berlage was retained approximately a year ago to file suit against Adam Spence. While having been paid in full for all work related to the Spence matter, Mr. Berlage has not filed against him and has not returned all files relating to Spence nor those obtained from Spence related to Plaintiffs.

3

13. Despite being paid in full for the work done (Items 11 and 12), Mr. Berlage has retained these files to which he has no right in a transparent attempt to force Plaintiffs to pay a disputed bill.

14. Mr. Berlage has negligently delayed taking action against Spence to Plaintiffs' detriment and, despite their paying all bills related to Spence with essentially no results, has depleted Plaintiffs' cash reserves with the result that Mr. Berlage's withdrawal from yet another case, allegedly because of a disputed bill, will place Plaintiffs' in the difficult position of having to represent themselves *pro se* for two reasons:

First - Paying for another attorney to review the files and become knowledgeable enough to adequately represent Plaintiffs would be very costly.

Second – Having already paid approximately $82,000, it would be extremely difficult for Plaintiffs to raise the money to pursue this action with another attorney.

15. Equity and fairness advocate the following:

(a) The Motion to Withdraw be denied;

(b) That the Court direct Mr. Berlage to meet with Plaintiffs, as described in Item 7;

(c) That the Court direct Mr. Berlage to turn over all files related to the Plaintiffs, whether or not this situation is resolved to his satisfaction; and

(d) That Mr. Berlage be directed to maintain all records and files related to legal work he has performed related to Plaintiffs for a period of at least 5 years rather than destroying them as he says he has the right to do and intends to do.

(e) If Plaintiffs' Objection to Mr. Berlage's Motion to Withdraw is denied, Plaintiffs request a hearing on this matter.

WHEREFORE, Plaintiffs beg the Court to deny Mr. Berlage's Motion to Withdraw Appearance.

If Plaintiffs' Motion to Deny the Motion to Withdraw Appearance is denied, Plaintiffs request a hearing.

Respectfully submitted,

_____
Paul Abbott, *pro se*

_____
Elaine Barker, *pro se*
415 N. Kenmore St.
Arlington, VA 22201-1725

cc: Jan I. Berlage
Gohn, Hankey & Stichel, LLP
201 N. Charles Street, Suite 2101
Baltimore, Maryland 21201

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this  8th  day of September 2010 a copy of Plaintiffs' Objection to their Counsel's Motion to Withdraw Appearance and proposed Order was sent via Federal Express, postage pre-paid to:

Jan I. Berlage
Gohn, Hankey & Stichel, LLP
201 N. Charles Street, Suite 2101
Baltimore, Maryland 21201

_____
Paul Abbott

_____
Elaine Barker